UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KEECHA HARRIS & ASSOCIATES, INC.,

          Plaintiff,

  v.

THE OFFOR WALKER GROUP, LLC,
d/b/a OFFOR LLC and IFEYINWA "Ify" WALKER,

          Defendant.
---------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff KEECHA HARRIS & ASSOCIATES, INC. ("KHA" or "Plaintiff") brings this Complaint against THE OFFOR WALKER GROUP, LLC, d/b/a OFFOR LLC ("OFFOR") and IFEYINWA "Ify" WALKER ("WALKER"), collectively (the "Defendants") for breach of contract, tortious interference and gross negligence. In support, KHA respectfully alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from OFFOR's breach of a professional services agreement, specifically, the Audit and Executive Search Services Agreement (the "Agreement"), and seeks to hold OFFOR accountable for critically failing to perform its obligations under the Agreement in conducting a search for candidates to fill a senior managerial role. Specifically, OFFOR failed to locate any qualified candidates that would be appropriate hires for KHA, let alone to fill the senior managerial role sought by KHA. Each of the candidates located by OFFOR failed to meet the qualifications for the senior managerial role. Further, OFFOR charged KHA fees that were explicitly prohibited by the Agreement.

2. OFFOR and WALKER also harmed KHA by engaging in gross negligence and reckless and/or intentional misconduct, including by failing to understand the basics of KHA's business to inform OFFOR's candidate search process and by mishandling the job postings and other communications about the status of the candidate search.

3. Despite its gross negligence and tortious interference, OFFOR and WALKER attempted to evade responsibility by leveraging an inapplicable limitation-of-liability clause.

4. KHA seeks monetary damages, restitution, and declaratory relief.

## PARTIES

5. Plaintiff KHA is a national consulting firm incorporated under the laws of State of Alabama, with its principal place of business in Birmingham, Alabama. KHA operates an office in Birmingham, Alabama.

6. OFFOR markets itself as an executive search firm, priced based on the level of services provided, and career management agency for executives based on a monthly subscription model. Upon information and belief, Defendant OFFOR is a limited liability company organized under the laws of the State of New York with its principal place of business in Lafayette, Louisiana. Upon information and belief, WALKER is OFFOR's sole member and is a citizen of the State of Wisconsin.

7. WALKER is OFFOR's founder and CEO and upon information and belief is a citizen of the State of Wisconsin.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction on the basis of diversity pursuant to 28 U.S.C. § 1332(a) because (1) the parties are citizens of different states; (2) the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

9. The Court has personal jurisdiction over OFFOR because it agreed to submit to the exclusive jurisdiction and venue of the courts located in New York, New York pursuant to the Agreement. OFFOR is also organized under the laws of New York.

10. Venue is proper in this District because OFFOR agreed to submit to the exclusive jurisdiction and venue of the courts located in New York, New York pursuant to the Agreement.

## FACTUAL ALLEGATIONS

A. **KHA's Business & Engagement of OFFOR**

11. KHA is a national consulting firm that is certified by the U.S. Small Business Administration as an 8(a) and Black-woman-owned business. KHA leads organizational development, project management, research and evaluation projects, convenings, and racial equity-based services for foundations, nonprofits, corporations, and government across sectors.

12. KHA partners with organizations to drive sustainable change rooted in racial and intersectional equity and works with decision-makers to disrupt patterns that reinforce inequities, guiding them to lead equitable systems and institutional change that transforms the status quo and fosters a just society with limitless possibilities for good.

13. In or about January 2024, KHA sought to engage an executive search firm to conduct a search and find a suitable candidate for the position of managing director of KHA, or a similar leadership position. The managing director would manage and lead KHA to enable Keecha

Harris, KHA's founder, Chief Executive Officer and President, to focus on generating business and building and continuing KHA's reputation.

14. KHA engaged in extensive discussions with OFFOR regarding "the Offor Method," a method purportedly designed to match an organization with a leader who is aligned with the purpose and values of the organization.

15. On or about February 12, 2024, the parties entered into the Agreement whereby, KHA engaged OFFOR for one of OFFOR's highest-level service packages, which included (1) a Talent and Culture Audit to "design, facilitate and execute a culture audit" (the "Audit"); and (2) an executive search for a senior leadership position (the "Position Search") (together, the "Services"). A true and correct copy of the Agreement is attached as Exhibit A.

16. The Agreement required KHA to pay OFFOR a fee of $133,600.00 for the Services.

**B. OFFOR Fails to Find a Suitable Position Search Candidate**

17. OFFOR conducted two searches for potential candidates for the Position Search.

18. In or about June 2024, after the first search, KHA informed OFFOR that it wanted to pause the engagement because the candidates that OFFOR had located were not aligned with KHA's needs. At this time, KHA had already paid the full $133,600.00 fee for the Services.

19. Despite having already been paid the entire amount under the Agreement, OFFOR demanded that KHA *pay an additional fee* of $27,844.00 to pause the search and have a new set of candidates prepared for review.

20. There was no basis in the Agreement for OFFOR to demand the additional fee. Indeed, Schedule A, Section 7(b) of the Agreement states that in the event a candidate is not placed within four

months of the effective date of the Agreement, OFFOR will provide a modified search *at no additional charge* to KHA.

21. Nevertheless, KHA, having already spent $133,600.00 under the Agreement, felt it had no choice but to pay the additional fee of $27,844.00 to avoid wasting the previously paid fees. True and correct copies of the invoices are attached as Exhibit B.

22. Beginning in or about September 2024, KHA began providing OFFOR with feedback as to the shortcomings of the first search, so that OFFOR could adjust its materials. KHA did not have direct access to edit OFFOR's materials, so KHA provided feedback by email and by telephone. Despite many iterations, KHA's feedback was never included in OFFOR's materials for the Position Search, and thus, the new search also failed to be appropriately tailored to KHA's business needs. OFFOR refused to correct this error.

23. Indeed, in early January 2025, when the candidate search launched again, OFFOR was again informed that the search profile that was advanced was not accurate. Yet, in response, OFFOR informed KHA that its deadlines were strict, and if the profiles were changed, KHA would lose a week of the Position Search.

24. Moreover, the materials that OFFOR prepared to post the job listing on LinkedIn and other networks were incorrect and had dead links, leading KHA to receive embarrassing notifications from contacts that the job posting link was not working correctly.

25. In or about February 2025, when reviewing the pool of candidates for interviews, OFFOR insisted that Ms. Harris interview a candidate that had missed the application deadline. Because the high-level position at issue required consistent and reliable attention to detail, Ms. Harris repeatedly expressed her concern that a candidate who missed a major deadline was not

appropriate. OFFOR disregarded Ms. Harris, and asked Ms. Harris to interview the candidate. As expected, the candidate was not suitable, and Ms. Harris had wasted her valuable time.

26. Ms. Harris, at that time, expressed to OFFOR's Senior Client Advisor that disregarding her input indicated that OFFOR was not treating KHA, its client, with the proper respect and agency.

27. KHA nevertheless reviewed seven other candidates identified by OFFOR and determined that none came close to being appropriate hires for KHA. As a social justice and racial equity firm, KHA partners with organizations that have already engaged in foundational Diversity, Equity, and Inclusion ("DEI") work and are ready to go deeper. KHA clients are not seeking introductory training sessions, one-off workshops, or "check the box" activities. Instead, KHA clients want to fundamentally shift how they operate and function. KHA helps these clients move beyond awareness into transformation, supporting deeper strategy, systemic change, and significant investments, both internally and externally. None of the candidates identified by Offor were qualified to drive the type of long-term transformational change that is the focus of KHA's work.

C. **OFFOR's Admissions and Malicious Conduct in Terminating the Agreement**

28. On February 19, 2025, during a call between Ms. Harris and WALKER, Ms. Harris informed OFFOR that she was deeply disappointed in the Services that KHA had received and that she wanted to terminate the Agreement. WALKER told Ms. Harris that she was alarmed to receive this feedback, and that she would investigate.

29. On February 25, 2025, following WALKER's investigation, WALKER sent an email to Ms. Harris stating that she had reviewed KHA's concerns and that "[b]ased on my findings, it's clear that at various stages of our partnership, we failed to meet your reasonable

expectations regarding advising, process, experience, and impact—or, frankly, our own." WALKER stated that OFFOR would immediately refund $80,720, to be paid at the end of that week, and stated that "[t]his amount includes $33,066 because we did not manage advising, process & experience to a successful outcome, $27,844 for the extra cultivation payment made when the initial search was paused, and $19,810 due to your dissatisfaction with the most recent candidate pool presented." A true and correct copy of the February 25, 2025, email is attached as Exhibit C.

30. The next day, on February 26, 2025, WALKER wrote Ms. Harris with additional follow-up items. WALKER stated that KHA would have until the end of March 28, 2025, to download the closeout folder, containing OFFOR's work product from the engagement. WALKER also stated that OFFOR planned to send an email to candidates on March 4, 2025, informing them that the search was terminated. *See* Exhibit C. Furthermore, OFFOR offered to exclude candidates from the planned notification if KHA decided that it would like to pursue further discussions with any of the candidates. *See id.*

31. Shortly thereafter, on March 3, 2025, WALKER and Ms. Harris further discussed the numerous problems with OFFOR's performance. During that call, WALKER informed Ms. Harris that OFFOR had failed KHA in multiple ways, and that "there were tears" had by WALKER after she completed her internal investigation. WALKER stated that, during the investigation, she had found additional mistakes and errors that KHA had not brought to WALKER's attention. WALKER stated that Ms. Harris never should have been pushed to interview the candidate who

had missed the application deadline, and that KHA never should have been charged any additional amounts.

32. Ms. Harris informed WALKER that the Audit did not, in fact, follow the process that OFFOR had presented to KHA when KHA was deciding to engage OFFOR. For example, after OFFOR delivered the assessment portion of the Audit, KHA met with OFFOR to explain that KHA employees had found OFFOR's assessment to be divisive. OFFOR did not take this feedback well and then failed to conduct the "day in the life" meeting that was scheduled for later that day. OFFOR, never, in fact, completed the "day in the life" exercise with KHA employees, and instead, apparently, completed the exercise itself, without consultation from KHA employees. Had OFFOR properly conducted the "day-in-the-life" exercise, it would have revealed how KHA's racial equity work differs from foundational DEI work. Because OFFOR did not take the time to learn about KHA's business, OFFOR did not present KHA with appropriate candidates during the position search.

33. In addition, during the March 3, 2025, call, WALKER and Ms. Harris discussed draft language, to be agreed upon by all parties, by which OFFOR would notify the candidate pool that the search had been terminated. The draft language was important so that KHA's reputation in the marketplace would not be damaged by calling off the search, especially when KHA still needed to conduct a future search to meet its outstanding hiring needs. WALKER and Ms. Harris also discussed a resolution of the post-termination covenants of the Agreement, and refund of amounts paid by KHA under the Agreement.

34. That same day, Ms. Harris wrote WALKER and stated that, while she appreciated WALKER's attempts to resolve the dispute, Ms. Harris felt that the numerous and substantial failures of OFFOR to perform merited a full refund of all sums paid, along with a complete release,

a full handover of materials, and a settlement agreement.  Ms. Harris also included the agreed-upon language to be sent to candidates regarding the termination.  A true and correct copy of the March 3, 2025, email is attached as Exhibit D.

35. Apparently outraged that Ms. Harris dared to negotiate for a better deal for KHA than was originally offered by WALKER, and according to information KHA received from an applicant, the very next day, on March 4, 2025, OFFOR unilaterally emailed candidates with an unauthorized message, informing them that the search had been terminated.  This was an intentional, malicious, and tortious bad act designed solely to damage Ms. Harris and KHA.  In addition, without notice, OFFOR withdrew KHA's access to the closeout folder, well in advance of the March 28, 2025, date that had previously been provided to KHA, thus depriving KHA of its access to the work product prepared by OFFOR pursuant to the Agreement.  OFFOR's bad acts caused reputational harm to KHA regarding KHA's stability and sustainability.

36. On or about April 21, 2025, through a LinkedIn post, WALKER appeared to admit to poorly managing OFFOR.  WALKER noted that she hired consultants to assist OFFOR and those consults "mirrored [her] chaos . . . [and her] confusion."  WALKER also noted that when she read her audits, which included feedback such as "Ify is overstretched,"  she "didn't restructure," she "didn't shift."  Further, WALKER stated that OFFOR "got foggy" and "lost [its] edge."  A true and correct copy of the LinkedIn posts are attached as Exhibit E.

## COUNT ONE
### (Breach of Contract)

37. KHA realleges and incorporates the foregoing paragraphs as if fully set forth herein.

38. On February 12, 2024, KHA and OFFOR entered into a valid, enforceable, and binding Agreement. Pursuant to the Agreement, OFFOR was to conduct an executive search for a managing director or similar senior leadership position.

39. KHA paid in full for Services under the Agreement. KHA also paid an additional fee not permitted under the Agreement.

40. OFFOR breached the Agreement by failing to perform its obligations under the Agreement, in particular, failing to perform the Position Search in accordance with it obligations, including by, among other things, failing to provide qualified candidates appropriate for the senior leadership role, failing to perform the Audit in accordance with the Agreement and professional standards; and mishandling communications concerning the candidate search.

41. As a direct and proximate result of OFFOR's failure to perform under the Agreement, KHA suffered damages in an amount to be determined at trial, including but not limited to paid fees, the costs it has incurred to remedy OFFOR's errors, and losses associated with delay in finding a qualified candidate to fill the senior leadership position.

42. Further, because OFFOR's breaches are the direct result of gross negligence and intentional tortious conduct, the limitation of liability set forth in the Agreement is not enforceable to prevent full recovery of KHA's damages.

43. As a result of Defendants' gross negligence, KHA has suffered and will continue to suffer damages in an amount to be proven at trial.

## COUNT TWO
### (Tortious Interference)

44. KHA realleges and incorporates the foregoing paragraphs as if fully set forth herein.

45. KHA had a prospective business relationship with members of the Position Search candidate pool in that KHA was actively seeking to hire for a senior leadership role. There was a reasonable probability that KHA and a qualified candidate in the candidate pool would have entered into a business relationship if Defendants had not tortiously interfered with the relationship.

46. At all times material herein, Defendants were aware of KHA's need to hire a qualified candidate for a senior leadership role. Further, once the parties agreed to end their contractual relationship, Defendants knew that any email to be sent to the candidate pool on March 4, 2025, informing them that the search was terminated, must include agreed-upon language.

47. Defendants intentionally and/or recklessly interfered with KHA's prospective business relationship with the Position Search candidate pool (i) by unilaterally emailing candidates an unauthorized message, informing them that the search had been terminated, using language that had not been agreed upon by the parties; and (ii) withdrawing KHA's access to the work product prepared by OFFOR pursuant to the Agreement. Defendants' interference was improper in that it was a direct and malicious response to KHA demanding a full refund for OFFOR's breaches of the Agreement. As a result of Defendants' malicious and improper conduct, KHA's reputation in the marketplace has been harmed.

48. As a direct result of Defendants' tortious interference, KHA has suffered and will continue to suffer economic harm and damages in amount to be proven at trial.

## COUNT THREE
### (Gross Negligence)

49. KHA realleges and incorporates the foregoing paragraphs as if fully set forth herein.

50. KHA retained the services of the OFFOR on or about February 12, 2024, to conduct an executive search on behalf of KHA.

51. OFFOR was to conduct a search for qualified candidates for a senior leadership position at KHA. At all times relevant hereto, OFFOR was aware of the purposes for which its services were being retained by KHA.

52. OFFOR had a duty to use due care in conducting the executive search, including to fully learn and understand KHA's organization, its business needs and culture. OFFOR had a further duty of care in terminating the Agreement.

53. OFFOR recklessly disregarded its own processes in conducting the Position Search. Further, WALKER recklessly ignored KHA's rights when it unilaterally emailed the candidate pool with an unauthorized message and further denied KHA access to the closeout folder.

## DEMAND FOR JURY TRIAL

54. Plaintiff demands a trial by jury on all issues to the extent permitted by applicable law.

## PRAYER FOR RELIEF

WHEREFORE, KHA respectfully requests that the Court enter judgment in its favor as follows:

A. An award of damages in an amount to be determined at trial, but in any event no less than $161,444.00, plus costs, interest, consequential damages and/or restitution;

B. Declaring that OFFOR committed gross negligence through its disregard for the contractual obligations under the Agreement;

C. Declaring that OFFOR committed reckless and/or intentional misconduct through its disregard for the contractual obligations under the Agreement;

D. An award of attorneys' fees, costs and expenses incurred in this action; and

E. Such further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
November 24, 2025

Christina H. Bost Seaton
**PIERSON FERDINAND LLP**
1270 Avenue of the Americas
7th Floor--1050
New York, NY 10020
christina.bostseaton@pierferd.com

*Attorneys for Plaintiff*