UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/26

KEECHA HARRIS & ASSOCIATES, INC.,

Plaintiff,

-against-

THE OFFOR WALKER GROUP, LLC, *doing business as* Offor LLC,

Defendant.

25-cv-9755 (MKV)

OPINION AND ORDER DENYING MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Keecha Harris & Associates, Inc. ("KHA") brings this diversity action against Defendant The Offor Walker Group, LLC ("Offor"), alleging that Offor breached an agreement to find a suitable candidate for a leadership position at KHA [ECF No. 16]. Offor moves to dismiss the case, principally arguing that KHA cannot seek relief because, Offor contends, KHA terminated the agreement for convenience, rather than for cause [ECF Nos. 17–19, 21]. However, whether KHA terminated the agreement for cause is a disputed question of fact that does provide a basis for dismissal at the pleading stage. For that reason, and for all of the reasons set forth below, the motion to dismiss is DENIED.

## I. BACKGROUND

### A. Facts[1]

#### 1. The Parties

Plaintiff Keecha Harris & Associates, Inc. ("KHA") is a consulting firm that provides

[1] The facts are taken from the Amended Complaint [ECF No. 16 ("AC")] and the documents attached to the Amended Complaint, including the Audit and Executive Search Services Agreement [ECF No. 16-1 at 1–5 (the "Agreement")], Schedule A to the Agreement [ECF No. 16-1 at 6–13 ("Schedule A")], two emails the principal of KHA sent to the principal of Offor [ECF No. 16-3 (the "Feb, 24 Harris Email"); ECF No. 16-5 (the "Mar. 3 Harris Email")], two emails the principal of Offor sent [ECF No. 16-4 at 3 (the "Feb. 25 Walker Email"); ECF No. 16-4 at 1–3 (the "Feb. 26 Walker Email")], and other exhibits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to

"racial equity-based services." AC ¶ 10. Defendant The Offor Walker Group, LLC ("Offor") is an executive search firm. *Id.* ¶ 6. "KHA sought to engage an executive search firm to conduct a search and find a suitable candidate for the position of managing director of KHA, or a similar leadership position." *Id.* ¶ 12. "KHA engaged in extensive discussions with [Offor] regarding 'the Offor Method'" for "match[ing] an organization with a leader who is aligned with the purpose and values of the organization." *Id.* ¶ 13.

**2. The Contract**

On February 12, 2024, the parties executed the Audit and Executive Search Services Agreement [ECF No. 16-1 at 1–5 (the "Agreement")] and Schedule A to the Agreement [ECF No. 16-1 at 6–13 ("Schedule A")].[2] *See* AC ¶ 14. Pursuant to Section 1 of the Agreement, Offor agreed to: (a) execute "a culture audit" of KHA, including "interviews of 10 to 12 stakeholders" and a written report (the "Audit"); and, thereafter, (b) "[c]onduct an executive search for a Managing Director or similarly senior leadership position" (the "Position Search"). Agreement § 1(a)–(b). In exchange, KHA agreed to pay $66,800 at signing (*i.e.*, on February 12, 2024), followed by two installments of $22,267 (due on March 29 and April 30, 2024, respectively) and one installment of $22,266 (due on May 31, 2024), for a total of $133,600 (the "Fee"). *Id.* § 2(b). The Agreement provides for an "Additional Fee" if the parties "mutually agree in writing" that Offor will interview "more than 12 stakeholders during the Audit." *Id.* § 2(d).

Schedule A sets forth additional obligations for both parties. In particular, it includes an

---

dismiss we must take all of the factual allegations in the complaint as true."); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit," "any statements or documents incorporated in it by reference," and any "document 'integral' to the complaint"). The Court also considers a July 2, 2024 "Amendment to Audit & Executive Search Services Agreement," which Offor submitted in connection with its motion to dismiss [ECF No. 18-1 (the "July 2024 Amendments")]. *See Chambers*, 282 F.3d at 153.

[2] The Agreement contains a New York forum selection and choice of law clause. *See* Agreement § 5.

obligation on the part of Offor to "make reasonable efforts" to "[c]omplete the Position Search" in four "phases," which are outlined in the contract. Schedule A § 3(d)(iii); *see* Schedule A, Ex. 1. In addition, "[i]n the event that a candidate is not placed within four (4) months after the Effective Date" of the Agreement, February 12, 2024, "and where th[e] Agreement has not been terminated" by one of the parties, Offor "will provide a Modified Search," meaning it will "identify [two to three] additional candidates for the Position . . . . at no additional charge to [KHA] until the earliest of" KHA hiring someone for the position, Offor identifying the two to three additional candidates, or four weeks. Schedule A § 7(b).

Schedule A also includes a section on "Termination," including provisions that govern termination for convenience and termination for cause. Schedule A § 4 ("Section 4"). Section 4(a) provides that "[e]ither Party may terminate th[e] Agreement for convenience immediately upon written notice to other Party." *Id.* § 4(a). Section 4(c) provides that "[e]ither Party may terminate th[e] Agreement immediately upon written notice to the other party for any material breach of th[e] Agreement by such other party where such breach remains uncured for seven (7) days' [sic] following such other Party's receipt of written notice of the alleged breach from the terminating Party." *Id.* § 4(c). Schedule A also provides that any unpaid "portion of the Fee and, if applicable, the Additional Fee," shall be "prorated," based on Offor's good faith determination," if KHA "terminates th[e] Agreement pursuant to Section 4(c)." *Id.* § 5(b).

**3. The Alleged Conduct of the Parties After the Execution of the Contract.**

KHA contends that, as a threshold problem, in conducting the Audit, Offor failed to "follow [the Offor Method] process" that Offor had pitched to KHA. AC ¶ 38. In particular, KHA alleges, Offor failed to properly conduct a "'day-in-the-life' exercise with KHA employees," which "would have revealed how KHA's racial equity work differs from foundational [diversity, equity, and

inclusion ("DEI")] work." *Id.* As a result, according to KHA, Offor "did not present KHA with appropriate candidates during the Position Search." *Id.* Thus, KHA alleges, Offor's "failure to follow its own process in connection with the Audit breached Section 1(a) of the Agreement, which in turn led to a breach of Section 1(b) of the Agreement and of Schedule A, Sections 3(d)(iii) and 7(b) of the Agreement in failing to conduct an appropriate Position Search." *Id.*

KHA alleges that, in connection with the Position Search, Offor "conducted two searches for potential candidates," neither of which bore fruit. AC ¶ 17; *see id.* ¶ 27. After the first search, in June 2024, "KHA had already paid the full $133,600" Fee for both the Audit and the Position Search under the Agreement. *Id.* ¶ 18; *see id.* ¶ 19; Agreement §§ 1(a)–(b), 2(b). However, KHA alleges, "the candidates that OFFOR had located were not aligned with KHA's needs." AC ¶ 18. KHA further alleges that, at this time, KHA "informed" Offor that KHA "wanted to pause the engagement" because of Offor's failure to find suitable candidates. *Id.* According to KHA, Offor "demanded that KHA *pay an additional fee* of $27,844.00 to pause the search and have a new set of candidates prepared for review, contrary to Schedule A, Section 7(b) of the Agreement" which provides that, if it fails to place someone within four months, Offor will conduct a Modified Search at no additional charge. *Id.* ¶¶ 19 (emphasis in original), 20; *see* Schedule A § 7(b).

Offor, however, contends that KHA sought to pause the search because of internal changes at KHA. Offor submits a document entitled "Amendment to Audit & Executive Search Services Agreement," which states that "Client requested OFFOR postpone its search services under the Agreement until January 13, 2024, in light of the organization's leadership transitions" [ECF No. 18-1 (the "July 2024 Amendments") at 1]. The July 2024 Amendments provide, *inter alia*, that Offor will suspend the Position Search until the "Resumption Date" (either January 13, 2025, or an earlier, mutually agreed-upon date), KHA will pay an additional $27,844 (due July 31, 2024),

and Offor has "four (4) months after the Resumption Date" to place a candidate before it has an obligation to conduct the Modified Search described in Section 7(b) of Schedule A. July 2024 Amendments §§ 2, 4(b), 5. KHA paid the $27,844. *See* AC ¶ 21; *id.*, Ex. B.

KHA alleges that, beginning in September 2024, it provided "feedback on the shortcomings of the first search." AC ¶ 22. However, according to KHA, Offor failed to edit its materials or otherwise tailor its search based on the feedback from KHA. *See id.* KHA alleges that the search "launched again" in January 2025, and KHA "again informed" Offor that it was not advancing the right "search profile." *Id.* ¶ 23. According to KHA, Offor responded that if it changed the profile at that point, "KHA would lose a week of the Position Search." *Id.* KHA further alleges that Offor posted the job listing on "LinkedIn and other networks" with "incorrect" materials and "dead links, leading KHA to receive embarrassing notifications" about these problems. *Id.* ¶ 24.

KHA alleges that, in February 2025, Offor "insisted that Ms. Harris," the principal of KHA, "interview a candidate [who] had missed the application deadline, despite her expressed "concern that a candidate who missed a major deadline was not appropriate" for a "high-level position" that "required consistent and reliable attention to detail." AC ¶ 25. According to KHA, the interview was a waste of time. *Id.* Thereafter, KHA "reviewed seven other candidates identified by OFFOR and determined that none came close to being appropriate hires." *Id.* ¶ 27.

In light of these problems, KHA alleges, "Ms. Harris sought to terminate the Agreement pursuant to Schedule A, Section 4(c) of the Agreement" based on Offor's "material breaches" of the parties' contract. AC ¶ 28. Specifically, "[o]n or about February 19, 2025," Ms. Harris informed the principal of Offor, Ms. Walker, "that she was deeply disappointed in the Services that KHA had received and that she wanted to terminate the Agreement for cause." *Id.* ¶ 29. According to KHA, Ms. Walker "told Ms. Harris that she was alarmed to receive this feedback, and that she

would investigate" the alleged failures by Offor. *Id.*

KHA alleges in the Amended Complaint that, "[o]n February 24, 2025, Ms. Harris reiterated, in an email," the "desire" she had previously expressed, via telephone, to "terminate the Agreement" for cause. AC ¶ 30. KHA attaches the email to its pleading [ECF No. 16-3 (the "Feb. 24 Harris Email")]. In the email, Harris discusses "finding a time for [the two principals] to meet" to discuss "how to conclude [their] partnership in a way that allows both parties to move forward with dignity, includes a form of reimbursement to KHA, and ensures access to the materials from th[e] search so that [KHA] can proceed effectively." Feb. 24 Harris Email. She also mentions finding a candidate for "the Managing Director role" whose "track record, credentials, and alignment with KHA's non-negotiables (racial equity experience and management) exceeded the abilities of most of the candidates [Offor] presented to us." *Id.*

KHA also attaches to its pleading two emails Walker sent to Harris on February 25, 2025 and February 26, 2025, respectively [ECF No. 16-4 at 3 (the "Feb. 25 Walker Email"); ECF No. 16-4 at 1–3 (the "Feb. 26 Walker Email")]. In the first email, Walker wrote:

> Thank you for sharing your concerns last week and allowing me time to conduct a thorough internal review. Based on my findings, it's clear that at various stages of our partnership, we failed to meet your reasonable expectations regarding advising, process, experience, and impact—or, frankly, our own. I sincerely apologize for this.
>
> In line with your decision to terminate our partnership, we will take the following steps, effective immediately:

Feb. 25 Walker Email. Walker proceeded to outline a number of steps she proposed to take, including several "refund[s]" totaling $80,720. *Id.* ("This amount includes $33,066 because we did not manage advising, process & experience to a successful outcome, $27,844 for the extra cultivation payment made when the initial search was paused, and $19,810 due to your dissatisfaction with the most recent candidate pool presented . . . ."). She also proposed to "notify

all candidates in the [Offor] pool that they have not been selected to advance in the search" and to "send KHA a close-out folder" with materials from the engagement. *Id*.

Walker sent an email the next day following up on "the steps [Offor was] taking to conclude [its] engagement with KHA." Feb. 26 Walker Email at 1. In that email, Walker asked Harris to provide "confirmation" with respect to the proposed "Candidate Release" notification and to inform her if KHA wanted to independently pursue any of the candidates, so Offor could exclude them from the notification. *Id.* She also represented that KHA would have until "Friday, March 28th" to "download the contents of [the] close-out folder." *Id.*

Thereafter, Harris sent an email, dated March 3, 2025, in which she requested a "full and complete refund of all sums paid," among other items, based on Offor's "breaches of trust, failure to meet agreed-upon expectations, and substantial negative impact to KHA" [ECF No. 16-5 (the "Mar. 3 Harris Email")]. She expressly cited:

- Quality of Candidate Slate: Despite repeated discussions outlining our needs, the candidates presented did not meet KHA's expectations, delaying our ability to fill a critical leadership role and impacting client commitments.
- Disregard for Feedback: Offor's representatives repeatedly advocated for candidates who did not align with our requirements, disregarding KHA's direct input and further straining the partnership.
- Operational Disruptions: Offor's actions have contributed to leadership and staff turnover, internal instability, and reputational concerns, creating organizational challenges beyond this engagement.

Mar. 3 Harris Email. She requested:

- A full and complete refund of all sums paid.
- A complete release from the contract between KHA and Offor, including those provisions intended to survive the termination of the relationship.
- A formal handover of all candidate pool materials, including the complete candidate list, resumes, applications, notes, and any market insights related to KHA that were gathered by Offor.
- A settlement agreement with mutually protective language to safeguard the reputations of both organizations.

*Id*. Harris also provided specific "[a]pproved" language for the notice to candidates that KHA was

not proceeding with the search Offor had been conducting. *Id.* at 2.

KHA alleges that, "on or about March 4, 2025 and thereafter," Offor "unilaterally emailed hundreds of candidates with an unauthorized message" that cast KHA as refusing to collaborate with Offor and entertain hiring its "carefully considered" candidates. AC ¶¶ 41–46. KHA further alleges that, "without notice," Offor "withdrew KHA's access to the closeout folder, well in advance of the March 28, 2025[] date that had previously been provided to KHA, thus depriving KHA of its access to the work product." *Id.* ¶ 48. In addition, on March 10, 2025, Offor, through counsel, "declined" the requests in Harris' March 3, 2025 email. *Id.* ¶ 49.

**B. Procedural History**

KHA initiated this case by filing a complaint, naming both Offor and Walker as defendants [ECF No. 1 (the "Original Complaint")]. The parties later filed pre-motion letters in connection with the defendants' contemplated pre-answer motion to the dismiss the Original Complaint [ECF Nos. 10, 13]. The Court issued an order setting a schedule for KHA to amend its pleading and the defendants to file a motion to dismiss [ECF No. 14].

KHA thereafter filed the Amended Complaint, which asserts one cause of action for breach of contract against Offor only [ECF No. 16 (the "Amended Complaint" or "AC")]. Walker is no longer a defendant. In the Amended Complaint, KHA alleges that Offor breached: Section 1 of the Agreement by failing to properly conduct the Audit and the Position Search; Section 3(d)(iii) of Schedule A by failing to conduct reasonable efforts to complete the Position Search to place a suitable candidate; Section 7(b) of Schedule A by charging KHA $27,844 instead of conducting a Modified Search at no additional charge; and other provisions. *See* AC ¶¶ 54–58. KHA seeks $161,444 in damages among other relief. AC at 15.

Offor responded to the Amended Complaint by filing a motion to dismiss, a declaration of

counsel attaching the July 2024 Amendments, described above, and a memorandum of law in support of its motion to dismiss [ECF Nos. 17, 18, 19 ("Mem.")]. KHA filed a memorandum of law in opposition to the motion [ECF No. 20 ("Opp.")]. Offor filed a reply memorandum in further support of its motion [ECF No. 21].

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Moreover, in this posture, a court may consider only "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Thus, a district court errs when it . . . 'relies on'" a defendant's version of the facts, asserted in its brief. *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (quoting *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991)). Indeed, "it is improper for the district court" to wade into a factual dispute at this stage. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (alteration adopted) (quoting *Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994)). Rather, the court must simply deny a motion to dismiss that relies on a disputed version of events. *See Friedl*, 210 F.3d at 83 ("Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal quotation marks and citations omitted).

## III. DISCUSSION

The motion dismiss that Offor has filed is obviously unavailing and borders on frivolous. Offor principally argues that KHA "cannot maintain a breach of contract claim" because of "KHA's [purported] admission that KHA terminated the Agreement for convenience by email dated February 24, 2025," rather than for cause, in accordance with Section 4(c) of Schedule A. Mem. at 4. For authority, Offor cites only a report and recommendation in which a federal Magistrate Judge states that "[u]nder New York law, a party who terminates a contract by convenience rather than by cause withholds the opportunity to cure from the terminated party and is thus barred from suing for breach of contract." *Id.* at 6 (brackets in original) (quoting *Applied Minds, LLC v. Guild Hall of E. Hampton, Inc.*, No. 24-cv-1465 (AT) (SLC), 2025 WL 4072652, at *3 (S.D.N.Y. Sept. 22, 2025), *report and recommendation adopted*, 2026 WL 775622 (S.D.N.Y. Mar. 19, 2026)). However, even accepting this proposition of New York law,[3] KHA does not admit that it terminated its contract with Offor for convenience.

As noted above, Section 4(a) provides that "[e]ither Party may terminate th[e] Agreement for convenience immediately upon written notice to other Party." Schedule A § 4(a). Section 4(c) provides that "[e]ither Party may terminate th[e] Agreement immediately upon written notice to the other party for any material breach of th[e] Agreement by such other party where such breach remains uncured for seven (7) days' [sic] following such other Party's receipt of written notice of the alleged breach from the terminating Party." *Id.* § 4(c). KHA expressly alleges that it terminated its contract with Offor for cause "pursuant to Schedule A, Section 4(c) of the Agreement" based on Offor's "material breaches" of the parties' contract. AC ¶ 28.

[3] *See Tishman Const. Corp. v. City of New York*, 228 A.D.2d 292, 293, 643 N.Y.S.2d 589, 590 (1st Dep't 1996) ("Where the City elects to terminate for convenience, as provided in section 15, whether with or without cause, it cannot counterclaim for the cost of curing any alleged default.")

Offor asserts that "by KHA's own admissions" it failed to comply with Section 4(c) "because (1) Ms. Harris did not provide Offor with written notice of the alleged breach (rather, this information was allegedly relayed in a phone call on February 19, 2025), and (2) less than seven days transpired between the phone call of February 19, 2025, and Ms. Harris' subsequent email dated February 24, 2025." Mem. at 8. This argument is nonsense or, at best, raises a dispute of fact that cannot sustain a motion to dismiss.

As an initial matter, nothing in the parties' contract precludes a party from orally informing the other party of its desire to terminate the contract for cause. Moreover, the February 24 Email itself could be interpreted as the "written notice" of "material breach" by Offor required by Section 4(c). Schedule A § 4(c). Harris wrote in that email that Offor had failed to present KHA with candidates who possessed the appropriate "track record, credentials, and alignment with KHA's non-negotiables." Feb. 24 Harris Email. As for timing, Harris did not purport to terminate the contract "immediately" on February 24, 2025. Schedule A § 4(c). Rather, she proposed meeting with Walker to discuss concluding the engagement. *See* Feb. 24 Harris Email.

In the Court's view, nothing in the substance of Harris' February 24 Email supports Offor's purely conclusory counter-assertion that it constituted notice of termination for convenience. Furthermore, on March 3, 2025, Harris sent Walker an email that expressly delineated several material breaches by Offor and requested termination of the contract on that basis. *See* Mar. 3 Harris Email. In all events, whether either email satisfies Section 4(c), for purposes of concluding that KHA terminated Offor for cause, is a question of fact on which the Court cannot pass and which cannot sustain a motion to dismiss at the pleading stage. *See Lively*, 6 F.4th at 301; *Friedl*, 210 F.3d at 83. Thus, the principal argument that Offor advances for dismissal is entirely meritless.

Offor next argues that the Amended Complaint should be dismissed because it fails to cite

"specific language from the Agreement" that Offor allegedly breached. Mem. at 4. This argument also is borderline frivolous. As an initial matter, a plaintiff is not required to "quote directly from the contract alleged to have been breached." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011); *see First Class Concrete Corp. v. Rosenblum*, 167 A.D.3d 989, 990, 91 N.Y.S.3d 441, 443 (2nd Dep't 2018) (plaintiff is not required to plead contract terms "verbatim"); *see also Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148 (2d Cir. 1998) (plaintiff need only allege essential contract terms in nonconclusory language); *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453, 454, 915 N.Y.S.2d 239, 241 (1st Dep't 2011) (same). More to the point, here, the Amended Complaint expressly and repeatedly identifies the contract terms that KHA alleges Offor breached and attaches the documents to its pleading.

There is no support for Offor's argument that the Amended Complaint is unduly vague as to its alleged breaches. *See* Mem. at 9. For example, KHA expressly alleges that Offor breached Section 1(a) of the Agreement by failing to properly conduct a day-in-the-life exercise in connection with the Audit. *See* AC ¶ 38. KHA also expressly alleges that Offor breached Section 1(b) of the Agreement and Section 3(d)(iii) of Schedule A, which required Offor to make reasonable efforts to conduct the Position Search to place a suitable candidate, by failing to properly conduct the Audit, implement "feedback on the shortcomings" of its search, post the correct materials and working links, and, ultimately, provide a pool of suitable candidates. AC ¶¶ 22–26, 27, 38, 56. As such, the Court rejects this purported basis for dismissal.

KHA clearly states a claim for breach of contract. To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d

Cir. 2004); *see 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022). Here, KHA alleges that it executed a contract with Offor and paid Offor in full. *See* AC ¶¶ 14, 18–19; Agreement; Schedule A; AC, Ex. B. KHA further alleges that Offor breached the parties' contract in various ways, as discussed above, and that KHA was damaged by, *inter alia*, the loss of money, the delay in finding a suitable candidate for a leadership position, and the embarrassment working with Offor allegedly caused. *See* AC ¶¶ 24, 42, 63.

In yet another borderline frivolous argument, Offor contends that "the breach of contract claim is subject to dismissal" because Schedule A contains a Limitation of Liabilities clause that restricts the damages KHA might ultimately collect. Mem. at 14; *see* Schedule A § 12(a). In particular, Offor stresses that "consequential damages . . . are not recoverable." Mem. at 15; *see* Schedule A § 12(a). A limitation merely on consequential damages is not a basis for dismissal of a claim for breach of contract. *See IS Chrystie Mgmt. LLC v. ADP, LLC*, 205 A.D.3d 418, 419, 168 N.Y.S.3d 449 (1st Dep't 2022). It is premature, at this stage, for the Court to opine on the precise damages to which KHA might ultimately be entitled. *See id.* As such, the motion to dismiss the Amended Complaint is DENIED.

The Court concludes, however, that KHA fails to state a claim based on an alleged breach of Section 7(b) of Schedule A. In particular, KHA alleges that Offor breached Section 7(b) of Schedule A when Offor allegedly "demanded that KHA *pay an additional fee* of $27,844.00 to pause the search and have a new set of candidates prepared for review," instead of conducting a Modified Search for free. AC ¶ 19 (emphasis in original). As explained above, Section 7(b) provides that, if Offor fails to place someone within four months of the effective date of the Agreement, and the engagement has not been terminated, Offor will conduct a Modified Search, as defined in Schedule A, at no additional charge. *See* Schedule A § 7(b). However, KHA does

not dispute that it executed the July 2024 Amendments, which, though not attached to the Amended Complaint, are properly before the Court on a motion to dismiss because the parties' complete agreement is integral to that pleading. *See Chambers*, 282 F.3d at 153; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). In the July 2024 Amendments, KHA expressly agreed to pay an additional $27,844 and expressly deferred any obligation on the part of Offor to conduct the Modified Search until four months after the Resumption Date, which would have occurred after the engagement was terminated. *See* July 2024 Amendments §§ 2, 4(b), 5. As such, KHA cannot state a claim based on an alleged breach of Section 7(b).

The Court's conclusion that KHA cannot state a claim based on an alleged breach of Section 7(b) of Schedule A, however, does not change its conclusion that the Amended Complaint adequately states a claim for breach of contract. Offor also includes in its memorandum of law a cursory argument that KHA cannot state a claim for breach of contract based on its allegations about the early termination of its access to "the closeout folder." Mem. at 14. Because the Court has already concluded that the sole cause of action in the Amended Complaint survives the motion to dismiss, the Court is not required to pass on the sufficiency of every allegation in the Amended Complaint to sustain a claim for breach of contract. *See McSweeney v. Cohen*, 776 F. Supp. 3d 200, 231 (S.D.N.Y. 2025).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss [ECF No. 17] is DENIED. The Clerk of Court respectfully is requested to terminate the motion at docket entry 17.

**SO ORDERED.**

Mary Kay Vyskocil

**Date: September 24, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**